☑ Original ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>The Cellular Telephone Assigned<br>Call Number (414) 530-4099 | )<br>)<br>)<br>)<br>)<br>) |

Case No. 25-889M(NJ)

Matter Number 2023R00231

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 5/21/2025 *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Hon. Nancy Joseph _____.
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)* ☑ until, the facts justifying, the later specific date of 11/03/2025 .

Date and time issued: 5/7/2025 @ 11:09 a.m. _____ *Nancy Joseph* (signature)
_____
*Judge's signature*

City and state: Milwaukee, WI _____ Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

1. Records and information associated with the cellular device assigned call number **414) 530-4099** (referred to herein and in Attachment B as ("**TARGET CELL PHONE**"), that is in the custody or control of AT&T (referred to herein and in Attachment B as the "Provider"), a wireless communications service provider that is headquartered at 11760 U.S. Highway 1, Suite 300, North Palm Beach, FL.

2. The **TARGET CELL PHONE**.

<u>**ATTACHMENT B**</u>

**Particular Things to be Seized**

**I.      Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Accounts listed in Attachment A:

a.      The following subscriber and historical information about the customers or subscribers associated with the **TARGET CELL PHONE** for the time period April 1, 2024, to the present:

   i.      Names (including subscriber names, user names, and screen names);

   ii.      Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii.      Local and long distance telephone connection records;

   iv.      Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v.      Length of service (including start date) and types of service utilized;

   vi.      Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii.      Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

   viii.      Means and source of payment for such service (including any credit card or bank account number) and billing records; and

2

ix.    All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by Target Cell Phone 2 for the time period April 1, 2024, to the present including:

        a.    the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

        b.    information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as timing advance or engineering data commonly referred to as per call measurement data (PCMD, RTT, True Call, Advance Timing, Network Event Location Operating System Information (NELOS), WebMap, or equivalent).

b.    Information associated with each communication to and from the **TARGET CELL PHONE** for a period of **30** days from the date of this warrant, including:

    i.    Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

    ii.    Source and destination telephone numbers;

    iii.    Date, time, and duration of communication; and

    iv.    All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which Target Cell Phone 2 will connect at the beginning and end of each communication, as well as timing advance or engineering data commonly referred to as per call measurement data (PCMD, RTT, True Call, Advance Timing, Network Event Location Operating System Information (NELOS), WebMap, or equivalent).

c.    Information about the location of the **TARGET CELL PHONE** for a period of 30 days during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, RTT data, GPS data, latitude-longitude data, and other precise location information.

    i.    To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by

initiating a signal to determine the location of the Target Cell Phone on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii.     This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846, involving Joseph MEDINA and others known and unknown.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

4

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of *(Briefly describe the property to be searched or identify the person by name and address)* **The Cellular Telephone Assigned Call Number (414) 530-4099** | ) ) ) ) ) ) Case No. **25-889M(NJ)** Matter Number 2023R00231 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

❑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 846, and 843(b) | Distribution of and possession with intent to distribute controlled substances, conspiracy to distribute and possess with intent to distribute controlled substances, and use of communication facility to facilitate narcotics trafficking |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☑ Delayed notice of _180_ days *(give exact ending date if more than 30 days:* _11/03/2025_ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

HARLEEN KAUR   Digitally signed by HARLEEN KAUR
Date: 2025.05.06 05:46:48 -05'00'

*Applicant's signature*

Harleen Kaur, HSI Special Agent

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone _____ *(specify reliable electronic means)*.

Date: _5/7/2025_

*Judge's signature*

City and state: _Milwaukee, Wisconsin_    Honorable Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Harleen Kaur, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **(414) 530-4099** (hereinafter "**TARGET CELL PHONE**"), with listed subscriber Jesus A MEDINA at 2234 S 58th Street, West Allis WI, whose service provider is AT&T, a wireless telephone service provider headquartered at 11760 U.S. Highway 1, Suite 300, North Palm Beach, FL 33408.

2.     The **TARGET CELL PHONE** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

3.     Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act.  *See* 18 U.S.C. §§ 3121-3127.  The requested warrant therefore includes all the information required to be included in an order pursuant to that statute.  *See* 18 U.S.C. § 3123(b)(1).

4.     I am a Special Agent with The Department of Homeland Security (DHS), Homeland Security Investigations (HSI). I have been so employed since September 2022. I am an investigative or law enforcement officer of the United States within the meaning of Section 2501(7) of Title 18, United States Code, and am empowered by law to conduct investigations and to make arrests for offenses enumerated in Section 2516 of Title 18 of the United States Code. As

1

part of my duties as a Special Agent, I investigate violations of the federal controlled substance laws relating to Title 21 of the United States Code. I am empowered by a Memorandum of Understanding (MOU) with the Drug Enforcement Agency to conduct Title 21 Controlled Substance investigations.

5.      I have participated in all aspects of drug investigations, including physical surveillance, execution of search warrants, undercover operations, court-ordered wiretaps, analysis of phone and financial records, and the arrests of numerous drug traffickers. I am familiar with various methods of smuggling and trafficking narcotics and other controlled substances and the proceeds from sale of such substances. I am also familiar with methods used to evade detection of both the controlled substances and the proceeds from their sale that are used by drug traffickers. I have participated in investigations involving Title 21 offenses and am familiar with the Interagency Cooperation Agreement between the DEA and HSI. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.

6.      This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Throughout this affidavit, reference will be made to case agents or investigators. Case agents or investigators are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your Affiant has had regular contact regarding this investigation.

7.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 846 (conspiracy to distribute and possess with intent to distribute controlled substances), 841(a)(1) (distribution of controlled substances), and 843(b) (use of communication facilities to facilitate narcotics trafficking) have been committed,

2

are being committed, or will be committed by Joseph B. MEDINA and others.  There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

8.     The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a district court of the United States that has jurisdiction over the offenses being investigated; *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

9.     The United States, including HSI and the DEA, is conducting a criminal investigation of Jesus MEDINA, Carlos PEREZ SANTANA, Jesus SANCHEZ-GONZALEZ, and others regarding possible violations of Title 21, United States Code, Sections 846 and 841(a)(1).

10.     The investigation has revealed that a large drug trafficking organization (DTO) affiliated with Sinaloa, Mexico, is being operated in Milwaukee, Wisconsin.  The investigation has further revealed that the MLDTO is operating in Milwaukee, Wisconsin, Southern California, and Mexico, and that the DTO facilitates the importation of controlled substances from Mexico, into the United States, and elsewhere and uses commercial shipping companies to send cocaine to and from Southern California.

### Court-Authorized Wire and/or Electronic Interceptions

11.     On April 22, 2025, the Honorable United States District Court Judge, J.P. Stadtmueller, Eastern District of Wisconsin, authorized the continued interception of wire and electronic communications over (414) 213-5108 (TARGET TELEPHONE-4), used by

3

SANCHEZ-GONZALEZ, and the continued interception of wire and electronic communications over (414) 210-8099, used by PEREZ SANTANA for a period of 30 days. *See* Application No. 24-AP-11. Wire and electronic interceptions expire May 20, 2025, at approximately 11:59 p.m.[1]

## PEREZ-SANTANA and MEDINA Conversation

12.     On April 28, 2025, at approximately 6:13 p.m., phone number (414) 530-4099 (i.e., **TARGET CELL PHONE**), used by Jesus MEDINA, placed an intercepted call to PEREZ SANTANA, using (414) 210-8099. During the call, the parties greeted and the pertinent conversation started approximately one minute and eleven seconds into the call.

13.     PEREZ SANTANA asked MEDINA, "What happened with that dude?" MEDINA responded, "Uh, listen. He . . . ." PEREZ SANTANA asked, "Huh?" MEDINA continued, "He got busy. That his daughter... his daughter, um . . . ." PEREZ SANTANA subsequently asked, "So, then? What did you guys agree on? What did he tell you?" MEDINA answered, "Well, that— that... look. The truth... That—that... what's it called? That if I wanted to go... But that he had to be at the hospital, I don't know what the fuck." PEREZ SANTANA responded, "Yeah. Okay, so then he is not coming tomorrow?" MEDINA answered, "Uh, no." PEREZ SANTANA stated, "No? So then not right now?" [VOICES OVERLAP] MEDINA stated, "Listen!" PEREZ SANTANA replied, "Tell me." MEDINA then advised, "[STAMMERS] And there another thing.

---

[1] On September 11, 2024, November 13, 2024, and December 13, 2024, the Honorable United States District Court Judge, J.P. Stadtmueller, Eastern District of Wisconsin, authorized wire and/or electronic communications over cellular telephones used by subjects of the investigation. On January 10, 2025, the Honorable United States District Court Judge, Lynn Adelman, Eastern District of Wisconsin, authorized wire and/or electronic communications over cellular telephones used by subjects of the investigation. On February 7, 2025, the Honorable United States District Court Judge, Brett H. Ludwig, authorized wire and/or electronic communications over cellular telephones used by subjects of the investigation. [*See* Application No. 24-AP-11 pertaining to the aforementioned dated interception authorizations].

I don't know.... I don't know. Look, [STAMMERS] it seems like we call them... [BLOWS NOSE] The guy from Califas (California) called me." PEREZ SANTANA responded asking, "Uh-huh. And what did he tell you? What did he tell you?" MEDINA asked, "The one from Califas?" PEREZ SANTANA answered, "Yeah." MEDINA stated, "To say hi to you." PEREZ SANTANA replied, "[CHUCKLES] For real, man." MEDINA stated, "No, [STAMMERS] that when could he come. And I told him, 'No, not right now.' And... and I said, 'It's because your luggage went up a lot.' He said, 'Yes, but I thought that... that it was going up.' Just a bunch of lies, right?" PEREZ SANTANA replied, "Yeah. Well, just lies, man. Well, um... well, tell him to bring two (2), but at sixteen (16). Tell him."

14.    MEDINA replied, "Yes, well, that's—that's what I was going to tell you. Yeah. I said, 'Let me tell Carlitos. I'm going to tell that to Carlitos.'" PEREZ SANTANA advised, "But— but if he is going to come until next week, he can go to hell, man. Because, um—um... uh-huh. Uh, [STAMMERS] that one is urgent, dude. And if not, so I can look over here, because even if I pay a bit more, but there is a guy that goes to Chicago, dude." MEDINA responded, "Yeah." PEREZ SANTANA replied, "But, well, if I don't—don't have any other way, dude?" MEDINA responded, "Yeah, yeah, yeah. If not, I will go and I'll get the one thousand (1,000) bucks."

15.    PEREZ SANTANA replied, "There you go, dude. Then why don't you do it?" MEDINA replied, "Well... let me—let me see. Let me ask the guy from Califas to—to see what he says." PEREZ SANTANA replied, "Well... well... alright then, dude. But—but call me today, dude. If not, so that tomorrow... because I have a lot of pressure, dude. Alright?" MEDINA responded with, "You have high pressure? Dude, take the pill." PEREZ SANTANA stated, "No, dude, it's that... I should've another number by now, dude, but it's fucked. Alright? Alright, set.

5

Call me, dude." MEDINA responded, "Alright, then, dude." PEREZ-SANTANA ended the conversation stating, "To see what you resolve. Alright, cool."

16.     Based on my training, experience and familiarity with the investigation, I believe MEDINA is a source of supply for PEREZ SANTANA, and that PEREZ SANTANA and MEDINA are discussing replenishing their cocaine supply for distribution in the Milwaukee area. For example, PEREZ SANTANA advised MEDINA, "Yeah. Well, just lies, man. Well, um... well, tell him to bring two (2), but at sixteen (16). Tell him." Your affiant is aware that sixteen thousand dollars ($16,000) is within the current price range for one kilogram of cocaine. I believe that PEREZ SANTANA and MEDINA are attempting to replenish their cocaine supply, and that MEDINA is attempting to find additional sources to supply for himself and for PEREZ-SANTANA. ("I should've another number [plug] by now . . ."). MEDINA referenced, "the guy from Califas", meaning California, which you affiant believes to be Luis QUINONEZ-HERNANDEZ, based on telephone toll analysis between April 28, 2025, to May 1, 2025, showing approximately three calls  between QUINONEZ-HERNANDEZ and the **TARGET CELL PHONE**.  QUINONEZ-HERNANDEZ has previously been intercepted during the course of this investigation engaging in discussions relating to drug transactions.

17.     On April 30, 2025, at approximately 11:58 a.m., MEDINA, using the **TARGET CELL PHONE**, called (414) 210-8099, used by PEREZ SANTANA. During the call, MEDINA stated to PEREZ SANTANA, "That dude told me to go over there." PEREZ-SANTANA responded, "who?" MEDINA stated, "the one from Chicago." PEREZ SANTANA replied, "And, are you going?" MEDINA stated, "Well, yeah!" PEREZ SANTANTA stated, "so-so what do you want to do, dude." MEDINA stated, "Well, it's up to you." PEREZ SANTANA stated, "Can you

6

take the money?" MEDINA stated, "Yes, and Robertillo is already here. Robertillo, who wanted me to—to buy a ticket from him."

18.     MEDINA responded with, "I will call you right now." PEREZ SANTANTA stated, "Alright. [STAMMERS] Let... I will stop by with the money right now. Are you leaving today?" MEDINA answered, "All set! Yes, later." PEREZ-SANTANA stated, "Alright, then. Uh, it's good that you called me, dude, so I can cancel on Cholo, then." MEDINA stated, "Alright, then." PEREZ SANTANA stated, "Yes? Alright." MEDINA stated, "Alright, dude." PEREZ SANTANA replied, "I'll be there shortly. Alright."

19.     Based on my training, experience and familiarity with the investigation, I believe that MEDINA was not able to arrange a narcotics deal with "Califas," and MEDINA is meeting with his contact in Chicago to buy narcotics. At this time, MEDINA's contact is unknown to law enforcement. PEREZ SANTANA is asking MEDINA to buy narcotics for him for further distribution in the greater Milwaukee area. PEREZ SANTANA is giving MEDINA money to purchase narcotics from MEDINA's contact, presumably residing in Chicago.

20.     On the same day, April 30, 2025, at approximately 12:50 p.m., MEDINA, using the **TARGET CELL PHONE**, called (414) 210-8099, used by PEREZ SANTANA.  During the call, PEREZ SANTANA stated, "I'm over here in the back, dude." MEDINA replied, "I was going to tell you to let me park there, but no, no, like that." PEREZ SANTANA stated, "Uh-huh."

21.     Based on my training, experience, and familiarity with the investigation, I believe that PEREZ SANTANA drove to an unknown location to meet with MEDINA, to further discuss obtaining narcotics for distribution.

## CONCLUSION

22.     Evidence obtained during this investigation leads case agents to believe that MEDINA uses the **TARGET CELL PHONE**. The location data associated with the **TARGET CELL PHONE** will assist case agents in conducting targeted physical surveillance and further identify the locations and individuals associated with and the nature and scope of MEDINA's drug trafficking activities.

23.     The data associated with the **TARGET CELL PHONE** will be useful and will aid case agents in understanding MEDINA'S movements. It is difficult to conduct physical surveillance of MEDINA because he is a county worker and travels out of the Eastern District of Wisconsin. Additionally, MEDINA is situated within an apartment complex, which draws attention to law enforcement presence. Therefore, the location data associated with the **TARGET CELL PHONE** will assist case agents when other surveillance options do not provide insight into MEDINA whereabouts and drug trafficking activities, particularly because case agents believe that MEDINA may distribute narcotics at locations unknown to law-enforcement at this time.

24.     Case agents searched law enforcement databases to confirm that the **TARGET CELL PHONE** is currently being serviced by AT&T.

25.     Case agents are requesting this warrant authorize the collection of data related to the **TARGET CELL PHONE** for 30 days to further investigate MEDINA's activities, and to continue to identify locations to which MEDINA is traveling to further his drug distribution trafficking activities.

26.     Based upon my training and experience, I know that individuals involved in drug trafficking use their cellular telephones to contact other drug dealers and drug purchasers, and that information relating to their telephones may show the areas in which they are trafficking drugs and

8

the individuals who they are contacting to sell or distribute the drugs. Based upon the facts in this affidavit, there is probable cause to believe that MEDINA is engaged in the trafficking and distribution of controlled substances and is using the **TARGET CELL PHONE** while engaged in these crimes. I further submit that probable cause exists to believe that obtaining the location information for the **TARGET CELL PHONE** will assist case agents in determining MEDINA's criminal activities, to include meeting locations, co-conspirators, and drug customer(s).

27.     In my training and experience, I have learned that the Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

28.     Based on my training and experience, I know that some service providers can collect timing advance or engineering data commonly referred to as per call measurement data (PCMD), RTT, True Call, Advance Timing, WebMap, or equivalent. Per-call measurement data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower.

9

**Cell-Site Data**

29.     Based on my training and experience, I know that the Service Provider can collect cell-site data on a prospective basis about the **TARGET CELL PHONE**. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

**E-911 Phase II / GPS Location Data**

30.     I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data. Based on my training and

10

experience, I know that the Service Provider can collect E-911 Phase II data about the location of the **TARGET CELL PHONE**, including by initiating a signal to determine the location of the **TARGET CELL PHONE** on the Service Provider's network or with such other reference points as may be reasonably available.

31.    110.    I know that AT&T Corporation can provide historical precision GPS location information, historical handset location data, and handset triangulation data, also known as Network Event Location System (NELOS) data. NELOS data may provide location data based upon the handset itself.

<strong>Subscriber Information</strong>

32.    Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the **TARGET CELL PHONE** user or users and may assist in the identification of co-conspirators and/or victims.

<u><strong>AUTHORIZATION REQUEST</strong></u>

33.    Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

11

34.	I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

35.	I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the **TARGET CELL PHONE** on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

36.	I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until **180 days** after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **TARGET CELL PHONE** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18

12

U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

37.     Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

<u>**ATTACHMENT A**</u>

**Property to Be Searched**

1. Records and information associated with the cellular device assigned call number **414) 530-4099** (referred to herein and in Attachment B as ("**TARGET CELL PHONE**"), that is in the custody or control of AT&T  (referred to herein and in Attachment B as the "Provider"), a wireless communications service provider that is headquartered at 11760 U.S. Highway 1, Suite 300, North Palm Beach, FL.

2. The **TARGET CELL PHONE**.

1

**Particular Things to be Seized**

**I.    Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Accounts listed in Attachment A:

    a.    The following subscriber and historical information about the customers or subscribers associated with the **TARGET CELL PHONE** for the time period April 1, 2024, to the present:

        i.    Names (including subscriber names, user names, and screen names);

        ii.    Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii.    Local and long distance telephone connection records;

        iv.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v.    Length of service (including start date) and types of service utilized;

        vi.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii.    Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

        viii.    Means and source of payment for such service (including any credit card or bank account number) and billing records; and

2

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by Target Cell Phone 2 for the time period April 1, 2024, to the present including:

   a. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

   b. information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as timing advance or engineering data commonly referred to as per call measurement data (PCMD, RTT, True Call, Advance Timing, Network Event Location Operating System Information (NELOS), WebMap, or equivalent).

b. Information associated with each communication to and from the **TARGET CELL PHONE** for a period of **30** days from the date of this warrant, including:

   i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

   ii. Source and destination telephone numbers;

   iii. Date, time, and duration of communication; and

   iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which Target Cell Phone 2 will connect at the beginning and end of each communication, as well as timing advance or engineering data commonly referred to as per call measurement data (PCMD, RTT, True Call, Advance Timing, Network Event Location Operating System Information (NELOS), WebMap, or equivalent).

c. Information about the location of the **TARGET CELL PHONE** for a period of 30 days during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, RTT data, GPS data, latitude-longitude data, and other precise location information.

   i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by

3

initiating a signal to determine the location of the Target Cell Phone on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii.     This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.     Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846, involving Joseph MEDINA and others known and unknown.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

4

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO <u>FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)</u>

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by AT&T, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of AT&T. The attached records consist of _____.

I further state that:

a.    All records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of AT&T and they were made by AT&T as a regular practice; and

b.    Such records were generated by AT&T's electronic process or system that produces an accurate result, to wit:

1.    The records were copied from electronic device(s), storage medium(s), or file(s) in the custody of AT&T in a manner to ensure that they are true duplicates of the original records; and

2.    The process or system is regularly verified by AT&T and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

1

_____          _____
Date                             Signature

2